REDDICK *v.* SCOTT.

4-9140                                                    228 S. W. 2d 1008

Opinion delivered April 10, 1950.

*T. J. Gentry,* for appellant.

*Luke Arnett, Henry Donham, William J. Smith* and *William H. Donham,* for appellee.

GEORGE ROSE SMITH, J. This proceeding for unemployment benefits was brought by the twelve appellants, former employees of the appellee L. W. Scott, who does business as Scott Paper Box Company. Under the Ar-

kansas Employment Security Act (Ark. Stats. 1947, Title 81, Ch. 11) the case was heard by the Appeals Tribunal and reveiwed by the Board of Review. These tribunals awarded benefits to the appellants for a period prior to September 3, 1947, but denied any further benefits for the reason that thereafter the appellants' unemployment was due to their being on strike against the appellee. The circuit court affirmed this decision.

For the most part the facts are not in dispute. In August of 1947 a number of the appellee's employees began negotiating with a labor union representative with a view to joining the union. On August 14 this representative wrote to the appellee, requesting a conference for the purpose of discussing a contract between the union and the employer. On the following morning the appellee caused this letter to be posted by the time clock and in substance informed his employees that if they wanted to organize a labor union they would have to seek employment elsewhere. The Appeals Tribunal, finding that this conduct amounted to a lockout, allowed unemployment benefits for the period immediately following. Ark. Stats., § 81-1106 (d). That ruling is not questioned upon this appeal.

On August 20 the appellee sent a letter to each of the employees who were then away from their jobs. In this letter the employer assured his workmen that their connection with the Box Company had not been terminated by any act of the Company and that they were welcome to return to work. On August 21 the employees replied by letter, requesting assurance that if they returned to work there would be no discrimination on the basis of union activity. The appellee answered by mail the next day, stating that there would be no such discrimination. The employees then returned to their jobs. As we have indicated, unemployment benefits were allowed for this period of idleness.

About a week later, on Saturday, August 30, the employer requested six or seven of the men to work that Saturday afternoon. It is not clear from the record whether these men agreed to work that afternoon or

assigned various personal reasons for not being able to work. At any rate, they did not come back to work after the noon hour.° At the beginning of the next work day five of these men were informed that they were no longer employed by the Company. A majority of the other employees then called a strike and established a picket line. The five who had been discharged joined in the strike, all the striking employees taking the position that they would not return to work unless the five were reinstated or unless the appellee also discharged any others who failed to work on Saturday afternoon. In this proceeding the appellants seek unemployment benefits for the period beginning with the date of the strike.

The Appeals Tribunal denied benefits upon the sole ground that the appellants' unemployment was due to a labor dispute. In so holding, the Appeals Tribunal overlooked the fact that the Act does not deny benefits in every case of unemployment that results from a labor dispute. On the contrary, the Act authorizes the payment of benefits if the Commissioner finds that the labor dispute was caused "by the failure or refusal of any employer to conform to the provisions of any agreement or contract between the employer and employee or of any law of the State of Arkansas or of the United States pertaining to collective bargaining, hours, wages," etc. § 81-1106 (d).

On appeal the Board of Review considered to some extent the language just quoted but rested its affirmance on the ground that there was no agreement between the employer and the employees in this case. This conclusion was erroneous as a matter of law. It is undisputed that the letters of August 20-22 were exchanged, and the administrative tribunals so found. These letters unquestionably constituted an agreement that there would be no discrimination on account of union activity.

Thus the Appeals Tribunal was in error in concluding that the mere existence of a labor dispute precludes the allowance of benefits, and the Board of Review was in error in holding that there was no agreement that could have been violated by the employer. The appellee

insists that the judgment should nevertheless be affirmed, for the reason that the discharge of the five employees was not in violation of the agreement or of State or Federal law. With respect to the Federal law the National Labor Relations Board has held, in a decision rendered after that of the Board of Review, that the five men were not discriminated against on the basis of their union activity. *L. W. Scott, d.b.a. Scott Paper Box Co.*, 81 NLRB No. 98, Case No. 15-MC-28, Feb. 10, 1949. The Appeals Tribunal and the Board of Review may or may not agree with that decision.

The issues now remaining hinge upon questions of fact as yet undecided. Under the statute the findings of fact made by the Appeals Tribunal and the Board of Review are conclusive upon judicial review if supported by evidence. § 81-1107 (d) (7). Where an administrative body is empowered to make findings of fact it is not the province of the courts to discharge that function merely because the administrative agency has not acted. For instance, it has been our consistent practice under the Workmen's Compensation Act to remand the cause to the Commission if that body fails to make a finding upon a pertinent issue of fact. *Long-Bell Lbr. Co.* v. *Mitchell*, 206 Ark. 854, 177 S. W. 2d 920; *Paragould Laundry & Dry Cl. Co.* v. *Rogers*, 210 Ark. 764, 197 S. W. 2d 567. Here the administrative tribunals have not yet determined whether the labor dispute was caused by the appellee's failure to conform to his agreement or to law. Similarly, it is argued that the five discharged employees did not owe their original idleness to a labor dispute, but that also is a question of fact. Their right to benefits may depend at least in part upon whether they were available for work, as the Act contemplates. § 81-1105 (b) and (c). It is not the function of this court to, decide such fact questions in the first instance.

Reversed, with instructions to remand the cause to the Board of Review for findings of fact upon the issues that are still undecided and for further proceedings consistent with this opinion.

GRIFFIN SMITH, C. J., concurs. DUNAWAY, J., not participating.

42

GRIFFIN SMITH, Chief Justice, concurring. The opinion says that "The Issues now remaining hinge upon questions of fact as yet undecided. . . . Where an administrative body is empowered to make findings of fact it is not the province of the courts to discharge that function merely because the administrative agency has not acted." The same issue was presented in Case No. 4-9115, *Kimpel, Guardian,* v. *Garland Anthony Lumber Company,* 216 Ark. 788, 227 S. W. 2d 932. There the Workmen's Compensation Commission, as the majority opinion of this Court points out, had erroneously decided against a claim on a point of law. In the dissenting opinion it was said: "I would therefore give the Commission an opportunity to say whether, under the facts, a case was made." The majority opinion in the Kimpel case said, "Here the uncontradicted testimony would have established a case of partial dependency if Jethro had been 21 or more." Now we are saying that where the administrative body is *empowered* to make findings of fact, *"it is not the province of the courts to discharge that function merely because the administrative agency has not acted."*